# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS
# THE CIRCUIT AND DISTRICT COURTS
# AND THE COMMERCE COURT

---

## NORTHERN PAC. RY. CO. v. MAERKL.

### (Circuit Court of Appeals, Ninth Circuit. August 5, 1912.)

### No. 2,053.

1. COMMERCE (§ 27*)—EMPLOYER'S LIABILITY ACT—"EMPLOYED IN INTERSTATE COMMERCE"—"ENGAGED IN INTERSTATE COMMERCE."

Where an employé of defendant, an interstate railroad company, was injured, in part through the negligence of a fellow servant, when working in repair shops connected with an interstate track, engaged in repairing a car used by defendant indiscriminately in both interstate and intrastate commerce as occasion required, defendant was at the time "engaged in interstate commerce," and the employé was employed by defendant in such commerce, within the meaning of Employer's Liability Act April 22, 1908, c. 149, § 1, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), and an action for his injury or death may be maintained against defendant thereunder.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*

For other definitions, see Words and Phrases, vol. 3, pp. 2377–2380; vol. 8, p. 7649; vol. 3, pp. 2392–2394; vol. 8, pp. 7649–7651.

What law governs master's liability for injuries to servant, see note to Mexican Cent. Ry. Co. v. Jones, 48 C. C. A. 232.]

2. MASTER AND SERVANT (§ 226*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—ASSUMPTION OF RISK—CONTRIBUTING CAUSES OF INJURY.

That an employé may have assumed the risk from one of two contributing causes of an injury will not defeat his right to recover, where the other cause is one for which the master is liable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 659–667; Dec. Dig. § 226.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

3. ACTION (§ 45*)—JOINDER—INJURY RESULTING IN DEATH.

Under Employer's Liability Act April 22, 1908, c. 149, § 9, added by amendment by Act April 5, 1910, c. 143, § 2, 36 Stat. 291 (U. S. Comp. St. Supp. 1911, p. 1325), which provides that "any right of action given by the act to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employé, and, if none, then of such employé's

---

parents, and, if none, then of the next of kin dependent upon such employé, but in such cases there shall be only one recovery for the same injury," where an employé receives an injury for which he is entitled to recover under the act, and such injury subsequently results in his death, damages for his suffering, as well as for his death, may be recovered by his personal representative for the benefit of all the beneficiaries.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 378–448; Dec. Dig. § 45.*]

In Error to the Circuit Court of the United States for the Western Division of the Western District of Washington.

Action at law by Anna Maerkl, administratrix of the estate of George Maerkl, deceased, against the Northern Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

This action was originally brought by George Maerkl, on the 9th of August, 1910, to recover from the plaintiff in error, defendant below, damages for personal injuries sustained by him while employed as a car carpenter in repairing a refrigerator car at the railway shops at South Tacoma, Wash. In the construction of such cars the center sills upon which the floor of the car rests are six inches thick, nine inches broad, and run the full length of the car. These center sills rest on other heavy timbers placed crosswise over the trucks, called "needle beams," and at each end they are mortised into heavy cross-timbers called "end sills." The flooring of the car is held on top of the center sills and fastened thereto with heavy spikes or nails. Between the center sills are braces, extending from one sill to the other, called "packing," and the sills and packing are then inclosed with a lining, called "sheathing." When new center sills are to be placed in a car, the car is placed on one of the heavy repair tracks under the shed in the railway company's yards, and is raised up by means of jackscrews. The trucks are removed, and then the car is ready for the car repairers, who begin their work of dismantling and repairing the car by removing the needle beams, then removing the ceiling, then taking out the packing between the center sills, and then the end sills. When the end sill is removed, if the spikes or nails driven through the floor have broken off, or if the floor was not spiked to the center sills in the first instance, the center sills will necessarily fall of their own weight.

The original complaint alleged, among other things, that the car in question was being used in interstate commerce, and the negligence alleged was in substance that the defendant company furnished the plaintiff another carpenter to work with him, and that while the plaintiff was under the car his fellow workman removed the end sills, whereupon the center sills of the car fell on the plaintiff, inflicting the injuries for which the action was originally brought, and also alleging that the car was improperly constructed, by reason of the fact that the center sills were not fastened to the floor by means of spikes driven through it into the sills, so that, when the end sills and other support to the center sills were removed, the center sills necessarily fell, in inflicting the injury referred to.

Maerkl having, by reason of his injuries, died shortly after the commencement of the action, leaving a widow and children surviving him, the widow was appointed administratrix of the estate of the deceased, and thereafter filed, by the permission of the court, what was designated a "supplemental complaint," in which were repeated the allegations above mentioned, and which further set out the death of Maerkl as a result of his injuries, and the names of his surviving wife and children, and which also alleged in substance that by reason of his injuries sustained through the negligence of the defendant company, the said Maerkl was damaged in the sum of $5,000, and that by reason of his said injuries and of his death resulting therefrom the said widow and children were further damaged in the sum of $20,000 in being deprived of support by him and of his companionship and comfort.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In its answer to the complaint of the administratrix the railway company denied the alleged negligence on its part, admitted the negligence of Maerkl's fellow servant, and set up as affirmative defenses assumption of risk by Maerkl, his contributory negligence, and the negligence of his fellow servant, to which answer the plaintiff replied, and the cause came on for trial before a jury. Upon the impanelment of the jury the defendant asked the court to require the plaintiff to elect whether she would proceed to try "the action brought by the deceased during his lifetime for injuries which he received, and which is contained in the amended complaint filed by the administratrix, or whether upon the cause of action brought for damages resulting in the wrongful death of the deceased, and which is brought now by the administratrix and included in the said amended complaint." The motion being denied, the defendant company reserved an exception, and assigns the ruling as error. The defendant company also moved the court to dismiss the action on the ground that the plaintiff admitted the negligence of a fellow servant, which motion was likewise denied, with a like exception by the defendant, and assignment of error here.

Upon the close of all of the evidence the defendant asked the court to instruct the jury to return a verdict in its favor, "for the reason that the evidence fails to prove facts sufficient to entitle the case to go to the jury, and for the reason that the evidence shows that, if the injury was caused by the negligence of any other person than the plaintiff, it was the negligence of a fellow servant, and for the reason that the evidence shows that the plaintiff assumed the risk at the time and place he did, and was also guilty of contributory negligence in failing to exercise ordinary care for his own protection, and for the reason that she cannot maintain this action as administratrix under the evidence and under the law." That motion was likewise denied, and an exception taken by the defendant. The jury was then instructed by the court, to which instructions certain objections and exceptions were taken, and the following verdict returned:

"We, the jury impaneled in the above-entitled case, find for the plaintiff, and assess the total damages to be recovered herein at the sum of nine thousand five hundred and seventy-six and $80/100$ dollars ($9,576.80), of which the sum of $936.80 is the damages incurred by George Maerkl in his lifetime, and the sum of $8,640.00 is the damages sustained by his widow and children by reason of his death.

"E. B. Judson, Foreman."

The defendant company subsequently moved for judgment non obstante veredicto, which motion was denied, and the defendant allowed an exception to the ruling.

George T. Reid, J. W. Quick, and L. B. Da Ponte, all of Tacoma, Wash., for plaintiff in error.

Boyle, Warburton & Brockway, of Tacoma, Wash., for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

ROSS, Circuit Judge (after stating the facts as above). [1] It was stipulated by the parties:

"That the car under which George Maerkl, the deceased, was injured, at the time was a Northern Pacific refrigerator car; that the defendant is now, and at the time of the injury of the said George Maerkl was, the owner of a line of railway extending from the state of Wisconsin to the Pacific Coast, and also certain branch lines in the state of Washington, and during said time was transacting an extensive interstate and intrastate business as a common carrier; that in its business as a common carrier refrigerator cars were extensively used indiscriminately in both interstate and intrastate transportation as occasion might arise; and that the car in question had been

so used for a long time, and was at the time of the injury of said George Maerkl. being repaired by the defendant in its yards for use in interstate and intrastate commerce as occasion might arise."

The case shows that Maerkl, with three other carpenters, was put to work on the car on a certain Saturday, and that on that day they took down the transoms, needle beams, and ceiling; the deceased and one of his coworkers working at one end of the car and the other two at the other end. The following Monday the deceased returned to work upon the car, and while he was underneath it, removing the packing from between the center sills, his coworker removed one of the end sills, resulting in the immediate falling of the center sills on Maerkl, inflicting injuries from which he shortly died; the evidence going to show that the flooring of the car had never been fastened to those sills.

Two of the points urged on the part of the plaintiff in error are that the car, at the time of Maerkl's injury, was not used in interstate commerce, and that, therefore, he was not employed in such commerce, and as a further consequence that the act of Congress commonly known as the "Employer's Liability Act" does not apply to the case.

It appeared from the evidence that the place where the repairing was done was on the main line of the defendant company, between Tacoma, Wash., and Portland, Or., and was connected with it by switches over which the cars needing repairs were run, and over which, after repairing, they were again put into the service of the company for use in interstate and intrastate commerce as occasion required; and the parties are agreed that this particular car upon which the deceased was at work when injured had been for a long time indiscriminately used in interstate and intrastate commerce, and was to be again so used when repaired. That a car so used is one of the instruments of interstate commerce does not admit of doubt. Interstate Commerce Commission v. Illinois Central R. R. Co., 215 U. S. 452, 474, 30 Sup. Ct. 155, 54 L. Ed. 280. And in Southern Railway Co. v. United States, 222 U. S. 20, 26, 27, 32 Sup. Ct. 2, 56 L. Ed. 72, in holding that the Safety Appliance Act of March 2, 1893 (27 Stat. 531, c. 196 [U. S. Comp. St. 1901, p. 3174]), as amended March 2, 1903 (32 Stat. 943, c. 976 [U. S. Comp. St. Supp. 1911, p. 1314]), embraces all locomotives, cars, and similar vehicles used on any railway that is a highway of interstate commerce, and is not confined exclusively to vehicles engaged in such commerce, the court said:

"We come, then, to the question whether these acts are within the power of Congress under the commerce clause of the Constitution, considering that they are not confined to vehicles used in moving interstate traffic, but embrace vehicles used in moving intrastate traffic. The answer to this question depends upon another, which is: Is there a real or substantial relation or connection between what is required by these acts in respect of vehicles used in moving intrastate traffic, and the object which the acts obviously are designed to attain, namely, the safety of interstate commerce and of those who are employed in its movement? Or, stating it another way: Is there such a close or direct relation or connection between the two classes of traffic, when moving over the same railroad, as to make it certain that the safety of the interstate traffic and of those who are employed in its movement will be promoted in a real or substantial sense by applying the re-

quirements of these acts to vehicles used in moving the traffic which is intrastate as well as to those used in moving that which is interstate? If the answer to this question, as doubly stated, be in the affirmative, then the principal question must be answered in the same way. And this is so, not because Congress possesses any power to regulate intrastate commerce as such, but because its power to regulate interstate commerce is plenary, and competently may be exerted to secure the safety of the persons and property transported therein and of those who are employed in such transportation, no matter what may be the source of the dangers which threaten it; that is to say, it is no objection to such an exertion of this power that the dangers to be avoided arise, in whole or in part, out of matters connected with intrastate commerce. Speaking only of railroads which are highways of both interstate and intrastate commerce, these things are of common knowledge: Both classes of traffic are at times carried in the same car, and when this is not the case the cars in which they are carried are frequently commingled in the same train and in the switching and other movements at terminals. Cars are seldom set apart for exclusive use in moving either class of traffic, but generally are used interchangeably in moving both; and the situation is much the same with trainmen, switchmen and like employés, for they usually, if not necessarily, have to do with both classes of traffic. Besides, the several trains on the same railroad are not independent in point of movement and safety, but are interdependent, for whatever brings delay or disaster to one, or results in disabling one of its operatives, is calculated to impede the progress and imperil the safety of other trains. And so the absence of appropriate safety appliances from any part of any train is a menace, not only to that train, but to others."

It is equally plain, we think, that those engaged in the repair of such a car are as much engaged in interstate commerce as the switchman who turns the switch that passes the car from the repair shop to the main track to resume its place in the company's system of traffic, or any of the operatives who thereafter handle it in such traffic. In Colasurdo v. Central Railroad of New Jersey, 180 Fed. 832, it was held by the Circuit Court, and affirmed by the Court of Appeals for the second Circuit (192 Fed. 901), that the Employer's Liability Act of Congress of April 22, 1908 (35 Stat. 65, c. 149 [U. S. Comp. St. Supp. 1911, p. 1322]), applies to a repairer of a switch used for both interstate and intrastate commerce. We are of the opinion that it is also applicable to the case of the deceased, Maerkl.

That act provides, among other things, that every common carrier by railroad, while engaged in commerce between any of the several states, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employé, to his or her personal representative for the benefit of the surviving widow or husband, and children of such employé, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment. The third and fourth sections of the act are as follows:

"Sec. 3. That in all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employé, or where such injuries have resulted in his death, the fact that the employé may have been

guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé: Provided, that no such employé who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé.

"Sec. 4. That in any action brought against any common carrier under or by virtue of any of the provisions of this act to recover damages for injuries to, or the death of, any of its employés, such employé shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé."

[2] The pleadings, as well as the brief of the plaintiff in error, admit that Maerkl's coworker was guilty of negligence, and that such negligence was one of the proximate causes of his injury; and there was evidence tending to show, not only that the flooring of the car was not nailed to the center sills, but that that neglect could have been readily detected by proper inspection. In view of the evidence, and of the verdict of the jury based upon it, we must, of course, take it as true that the defendant company was guilty of negligence in failing to have the flooring of the car properly fastened to the center sills, and, in view of the statute referred to, that Maerkl was not bound by any negligence of his fellow servant, nor are his heirs or representative. The verdict, in view of the evidence, must also be taken as conclusive that Maerkl was not guilty of any contributory negligence. In respect to the defense set up of assumption of risk by him, it is sufficient to say that a risk arising out of the carrier's neglect, and of which the employé had no knowledge, was not one which can be held to have been assumed by him. Moreover, one of the acts which confessedly was one of the proximate causes of the injury complained of was an act of a fellow servant of the deceased, which, under the act of Congress in question, is unavailing to the employer company; and, that being so, it would not avail the plaintiff in error, even if the deceased could be held to have assumed the risk of the defendant's negligence in failing to see that the flooring was properly fastened to the center sills, since the law is that it is only necessary for the plaintiff to show that one of the co-operating causes of the injury complained of was a negligent act or omission for which the master is responsible. Kreig v. Westinghouse & Co., 214 U. S. 249, 29 Sup. Ct. 619, 53 L. Ed. 984; Standard Oil Co. v. Brown, 218 U. S. 78, 30 Sup. Ct. 669, 54 L. Ed. 939; Deserant v. Cerillos Coal R. R. Co., 178 U. S. 409, 20 Sup. Ct. 967, 44 L. Ed. 1127; Morgan v. Robinson, 157 Cal. 348, 107 Pac. 695; Seaboard Air Line v. Witt, 4 Ga. App. 149, 60 S. E. 1012; Labatt on Master & Servant, § 813.

[3] The question remains whether there is substantial basis for the contention of the plaintiff in error to the effect that recovery cannot be had in the same action both for the injury sustained by the deceased and for his death, even where, as here, the action is brought by the representative of the deceased for the benefit of all of the ben-

eficiaries. But for the amendment of the act of April 22, 1908, the position would be well taken, for that act contained no provision for the survival of the cause of action thereby given to the injured employé for personal damages sustained by him. But on the 5th day of April, 1910, Congress amended the act of April 22, 1908, by changing section 6 thereof, and by adding the following section as section 9:

"Sec. 9. That any right of action given by this act to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employé, and if none, then of such employés parents, and, if none, then of the next of kin dependent upon such employé, but in such cases there shall be only one recovery for the same injury." Act April 5, 1910, c. 143, 36 Stat. 291 (U. S. Comp. St. Supp. 1911, p. 1325).

It thus appears that Congress by the amendment of 1910 provided for the survival of the cause of action given by the act of April 22, 1908, to the employé for his personal injuries, and conferred that cause of action, not upon the estate of the injured employé in the event of his death, but, first, upon the surviving widow or husband and children of such employé, with the further provision that "in such cases there shall be only one recovery for the same injury."

We are of the opinion that the plain meaning of these statutory provisions is that, where one receives an injury in the employment of a railroad company under such circumstances as entitles him or her, as the case may be, by virtue of the statute, to recover from the company damages therefor, and that such injury results in the death of the injured person, damages resulting from the personal suffering, and from such death, not only may be recovered by the personal representative of the deceased in one action, but *must* be recovered in one action only, if at all, for the benefit of those specified in the statute.

It results that the judgment in the present case must be, and is, affirmed.