## LAW v. ILLINOIS CENT. R. CO. et al.

### (Circuit Court of Appeals, Sixth Circuit.   November 4, 1913.)

### No. 2,362.

1. APPEAL AND ERROR (§ 1039*)—REVIEW—HARMLESS ERROR—VARIANCE.

A variance about which no question was raised on the trial, which could have been cured by amendment if suggested and was of a character which could not have misled defendant, is not ground for reversal of a judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4075–4088; Dec. Dig. § 1039.*]

2. MASTER AND SERVANT (§ 198*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—"FELLOW SERVANT."

A boiler maker in the employ of a railroad company and his helper are fellow servants, and there can be no recovery against the company at common law for an injury to the latter through the negligence of the former.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 493–514; Dec. Dig. § 198.*

For other definitions, see Words and Phrases, vol. 3, pp. 2716–2730; vol. 8, p. 7662.

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

3. COMMERCE (§ 27*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—EMPLOYERS' LIABILITY ACT—EMPLOYÉ "EMPLOYED IN INTERSTATE COMMERCE."

A boiler maker's helper employed in the shops of a railroad company, injured while assisting in the repair of an engine regularly in use in interstate commerce but temporarily in the shop for repairs, where it had been for 21 days, and which was returned to use two days later, was "employed in interstate commerce" at the time of his injury within the meaning of Employers' Liability Act April 22, 1908, c. 149, § 1, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), and may maintain an action for the injury under such act.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action at law by John Law against the Illinois Central Railroad Company and the Yazoo & Mississippi Valley Railroad Company. Judgment for defendants, and plaintiff brings error. Reversed.

Dan F. Elliotte and Bell, Terry & Bell, all of Memphis, Tenn., for plaintiff in error.

Albert W. Biggs and T. A. Evans, both of Memphis, Tenn. (Chas. N. Burch and H. D. Minor, both of Memphis, Tenn., of counsel), for defendants in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

KNAPPEN, Circuit Judge. Plaintiff sued to recover for accidental injuries received while in the employ of the defendant companies. At the close of the testimony verdict was directed for defendants. The evidence tended to show the following:

Plaintiff was a "boiler maker's helper" employed in defendants' shops in Memphis, Tenn. At the time of the accident he was helping the boiler maker, one Morgan, in repairing a "petticoat" for a freight engine regularly employed by defendants in interstate commerce. For the purpose of fastening together two sheet-iron plates, a rivet was set on end under the overlap and a nut placed on top of the plates over the rivet. The boiler maker, in striking the nut for the purpose of driving the rivet through the plates, hit a glancing blow, whereby the nut flew and struck plaintiff in the eye. The grounds on which verdict was directed were (a) that plaintiff and Morgan were fellow servants, and (b) that plaintiff was not engaged in interstate commerce. Defendants contend here that there was no proof of negligence and that the direction should be sustained on that ground.

1. The contention that the proof did not tend to show that Morgan was negligent is without merit. The testimony is that the usual way of riveting plates of the character in question is to drill or punch a hole for the rivet before inserting it; but that in this case, by reason of hurry and to save time, the course stated was followed. The testimony had a tendency to prove negligence, without invoking the doctrine of res ipsa loquitur.

[1] A variance between the declaration and the proof is suggested, in that the declaration alleges as ground of negligence the attempt to drive the hole through the metal with a cold rivet, when Morgan knew, or should have known, that this method was dangerous and improper; while the proof showed that the injury occurred because of the glancing blow which caused the nut to fly and strike plaintiff. This criticism is without point. If a variance existed (which we do not intimate), it is enough to say that no question of variance was raised upon the trial, that the alleged variance could have misled no one, and that, had it been suggested, it would have been the duty of the court to permit amendment. Pennsylvania Co. v. Whitney (C. C. A. 6th Cir.) 169 Fed. 572, 578, 95 C. C. A. 70.

[2] 2. Plaintiff claims a right of recovery both under defendants' common-law obligation and under the Second Employers' Liability Act.[1] Under the latter, Morgan's negligence would not bar action, for the act makes the negligence of a fellow servant the negligence of the defendants. Southern Ry. Co. v. Gadd, 207 Fed. 277, decided by this court May 6, 1913; Central Ry. Co. v. Young (C. C. A. 3d Cir.) 200 Fed. 359, 366, 118 C. C. A. 465. At common law, however, the negligence of the fellow servant bars recovery. Morgan was clearly plaintiff's fellow servant. The two employés were engaged in the same duties. The fact that Morgan was the boiler maker and plaintiff the helper does not alter the situation. Illinois Central R. R. Co. v. Hart (C. C. A. 6th Cir.) 176 Fed. 245, 247, 100 C. C. A. 49, and cases cited.

---

[1] Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322).

No case is presented of violation of nondelegable duty to provide a safe place to work. The place itself was safe. It was made unsafe only by the negligent operation of the fellow servant. See Railway Co. v. Hart, supra, 176 Fed. at pages 250 and 251, 100 C. C. A. 49. On the case presented, plaintiff was therefore not entitled to recover upon defendants' common-law obligation.

[3] 3. Was the plaintiff engaged in interstate commerce?

It is the well-settled rule that, in order to bring a railroad employé within the protection of the Employers' Liability Act, it is not necessary that he be directly engaged in train movements. As pointed out by Mr. Justice Van Devanter in Pedersen v. D., L. & W. R. Co., 229 U. S. 146, 152, 33 Sup. Ct. 648, 57 L. Ed. 1125, the true test is whether the work in which the employé is engaged is a part of the interstate commerce in which the carrier is engaged. As illustrating this proposition: In Norfolk & Western Ry. Co. v. Earnest, 229 U. S. 114, 33 Sup. Ct. 654, 57 L. Ed. 1096, the employé whose recovery was affirmed suffered his injuries while piloting a locomotive (by walking in advance of it) through several switches in the railroad yards to a main track, where the locomotive was to be attached to an interstate train to assist in moving it up a grade in the direction of the next station. In St. Louis, S. F. & Texas R. R. Co. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129, a yard clerk, whose duties were to take the numbers of, seal up, and label cars, some of which were engaged in interstate and some in intrastate traffic, was held to be engaged in interstate commerce while on his way to the performance of his duties through the yards to one of the tracks therein, to meet an incoming train from another state. In Lamphere v. Oregon Ry. & Nav. Co., 196 Fed. 336, 116 C. C. A. 156, a locomotive fireman in the employ of an interstate railway company was held by the Circuit Court of Appeals of the Ninth Circuit to be engaged in interstate commerce while approaching a station at which he was to take a train for transportation to another station, to relieve the crew of an interstate train. In Illinois R. R. Co. v. Porter (C. C. A.) 207 Fed. 311, a trucker who received injuries through the negligence of a fellow trucker while loading a car for interstate transportation was held by this court to be engaged in interstate commerce.

Approaching more nearly the specific question presented: There can be no doubt that railroad employés are within the purview of the Employers' Liability Act while engaged in the repair of engines, cars, bridges, tracks, and switches actually in use in interstate commerce. Such was the express holding of the Supreme Court in the Pedersen Case. In Walsh v. N. Y., N. H. & H. R. R. Co., 223 U. S. 5, 6, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44, the plaintiff was at the time of his injuries engaged in replacing a drawbar upon a car in use in interstate commerce. In Central Ry. Co. v. Colasurdo, 192 Fed. 901, 113 C. C. A. 379, a track walker engaged in repairing a switch in the railroad yards was held, by the Circuit Court of Appeals of the Second Circuit, to be within the protection of the act.

But the crucial question remains whether the engine, at the time the work in question was being done, was so far withdrawn from

commerce as that the work of repair was not a part of the interstate commerce in which the defendant was engaged. The authorities so far cited are not directly decisive of this specific question. In the Colasurdo Case the switch and track were still in use. The bridge in the Pedersen Case does not affirmatively appear to have been actually out of use. In the Walsh Case the car was apparently still upon a track in the railroad yards, although it was of course temporarily out of use during the replacement of the drawbar.

In the instant case the engine was in the shop for what is called "roundhouse overhauling." It had been dismantled at least 21 days before the accident. Up to the time it was taken to the shop it was actually in use in interstate commerce. It was destined for return thereto upon completion of repairs. It actually was so returned the day following the accident. It clearly did not lose its interstate character from the mere fact that it was not at the time actually engaged in interstate movement, no more than did the dining car in Johnson v. So. Pacific R. R. Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363, while waiting for a train to make the return trip, or than did the car in the Walsh Case while standing on a track awaiting replacement of the drawbar. Were the repairs being made in the roundhouse between two regular daily trips, the engine, while under such repair would clearly not lose its character as an instrumentality of commerce; and plaintiff, in such case, would have been engaged in interstate commerce. We have not here a case of original construction of an engine not yet become an instrumentality of interstate commerce. It had already been impressed with such use and with such character. Its preservation as such was not a matter of indifference to defendant, so far as its interstate commerce was concerned. See Pedersen Case, 229 U. S. 151–152, 33 Sup. Ct. 648, 57 L. Ed. 1125. Under the existing facts, can the length of time required for the repairs change the legal situation? If so, where is the line to be drawn? How many days temporary withdrawal would suffice to take it out of the purview of the act? And is it material whether the repairs take place in a roundhouse or in general shops? Is not the test whether the withdrawal is merely temporary in character? As held in the Pedersen Case, the work of keeping the instrumentalities used in interstate commerce (which would include engines) in a proper state of repair while thus used is "so clearly related to such commerce as to be in practice and in legal contemplation a part of it." In Northern Pacific R. Co. v. Maerkl, 198 Fed. 1, 117 C. C. A. 237, the Circuit Court of Appeals of the Ninth Circuit held that an employé engaged at the railway shops in making repairs upon a refrigerator car theretofore used in interstate commerce, and intended to be again so used when repaired, was within the protection of the Employers' Liability Act. The repairs there in question were substantial in their nature, requiring at least a partial dismantling of the car, which had been in the shop two days when the accident occurred. The rule announced by this decision commends itself to our judgment. We find nothing in the decisions of the Supreme Court opposed to the conclusion so reached. On the contrary, it may be noted that the Maerkl

Case is cited (with apparent approval) in the opinion in the Pederse" Case, 229 U. S. 152, 33 Sup. Ct. 648, 57 L. Ed. 1125, upon the subject of the test to be applied in determining whether the work is a part of the interstate commerce in which the carrier is engaged.

It results from these views that it was error to direct verdict for defendant. The judgment of the District Court is reversed, with costs, and a new trial ordered.