## James F. Bishop, Administrator, Defendant in Error, v. Chicago, Milwaukee & St. Paul Railway Company, Plaintiff in Error.

### Gen. No. 24,924.

1. WORKMEN'S COMPENSATION ACT, § 5*—*what plaintiff must prove to maintain action at law.* In an action against a master to recover for the death of a servant which is predicated on defendant's election not to avail itself of the provisions of the Workmen's Compensation Act, to establish a cause of action plaintiff' must prove that defendant gave notice of its election to its employees personally or by posting such notice as the Workmen's Compensation Act requires.

2. COMMERCE, § 2*—*when engagement in interstate not shown in action under Federal Employers' Liability Act.* A cause of action under the Federal Employers' Liability Act for the death of a car repairer caused by the falling over of the car on which he was working, which car belonged to another company owned and controlled by defendant, is not established by evidence which, while showing that the last commercial service in which the car was engaged before the accident and the first after the accident was in interstate commerce, does not disclose that during the interval between the two hauls or while it was thus undergoing repair it was designed or intended to be next used in interstate commerce or in any special service, but does tend to show that it might have been used in either interstate or intrastate commerce.

3. COMMERCE, § 2*—*what must be proved to show relation of car repairing to interstate commerce.* To establish a cause of action under the Federal Employers' Liability Act for the death of a car repairer, killed while repairing a car which was not, at the time, engaged in either interstate or intrastate commerce but subject to use in either, there must be proof, either express or implied, that the car was being repaired for the specific purpose of being next used in interstate commerce.

4. MASTER AND SERVANT, § 41*—*when employee not relieved of assumption of risk by statement of foreman as to safety.* The statement of a foreman to a car repairer that it is all right to use a jack to support a car on which the repairer is working cannot be construed as an order to work on the car without further precautions, where the danger of using the jack for such purpose

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

instead of a "horse," which was the usual means, is obvious, and consequently, such statement does not relieve the repairer of the assumption of risk of injury from the falling of the car through failure to use the horse.

Error to the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919. Reversed. Opinion filed March 9, 1920.

O. W. DYNES, CARL S. JEFFERSON and J. M. LORENZ, for plaintiff in error; H. H. FIELD, of counsel.

SCOTT O. CAVETTE, VINCENT G. GALLAGHER, and ERNEST MESSNER, for defendant in error.

MR. JUSTICE BARNES delivered the opinion of the court.

This action was brought to recover under the statute compensation for the death of one Maniocha, a car repairer in defendant's employ who was killed in the course of his work as such repairer. He and his helper had raised one end of a car by pumping jacks, placing one on each side of the car, to enable them and defendant's carpenter to splice one of its sills. To support the car they placed a "horse" back of one of said jacks, and a screw jack back of the other, as another horse could not be found. The supports of the car gave way during the work of splicing while Maniocha was using a sledge hammer, it toppling to the side where the screw jack was placed and falling on deceased, thus causing his death.

The case was submitted to the jury both upon the State law and the Federal Employers' Liability Act. The verdict was for plaintiff, and the jury made a special finding that at the time of the injury the deceased was engaged in interstate commerce.

The counts of the declaration predicated on the State law alleged that defendant elected not to avail itself of the provisions of the Workmen's Compensa-

tion Act. This plaintiff was required to prove to sustain a cause of action under said counts. He failed, however, to prove that defendant gave notice of such election to its employees personally or by posting such notice as the act requires, and, therefore, failed to prove a cause of action under the State law. (*Beveridge v. Illinois Fuel Co.*, 283 Ill. 31, 17 N. C. C. A. 463.)

And we think the evidence does not sustain a cause of action under the Federal Act. While the last commercial service before the accident, and the next after it, in which the car was engaged, was in interstate commerce, the evidence does not disclose that during the interval between the two interstate hauls, or while it was thus undergoing repair, it was designed or intended to be next used in interstate commerce or in any special service. On the contrary, the evidence tends to show that it might have been used in either interstate or intrastate commerce.

The car belonged to the C. M. & Puget Sound Ry. Co., whose line extends from the Pacific coast to Mobridge, South Dakota, but at the time in question said Puget Sound Railway was owned and controlled by defendant. The car was loaded at some point in South Dakota on defendant's tracks with wheat for shipment to Chicago, where it arrived in one of defendant's yards October 12, 1914. It was switched to the tracks of another line to be unloaded, and was returned empty to defendant's yards October 23, 1914, when it was placed on defendant's repair tracks for repair. The accident happened November 2, 1914. The car was next placed in commercial service November 13, 1914, when it was loaded with lumber transferred from a disabled car that arrived from without the State destined for Milwaukee, Wisconsin. The last record of the car is that it hauled such lumber to Milwaukee, arriving there November 14, 1914.

It is undisputed that the car remained empty in defendant's yards from October 23 until it was so

loaded November 13, and that it came into the State just before withdrawal from service for repair, and went out of the State, in its next commercial service, on defendant's tracks in an interstate haul. There is no evidence, however, that the car was used exclusively in interstate commerce or that it was being repaired specially or solely for such service. On the contrary, the evidence imports it might have been next put to use in intrastate commerce.

While the chief clerk in defendant's car accountant's office testified that it was the prevailing custom in 1914 to keep "a foreign car" so routed that it would reach its own track, and that the Puget Sound car was going towards its own rails when so routed to Milwaukee, he added that no distinction was made between a St. Paul car and Puget Sound car so long as it was on the St. Paul track. Corroborating this last statement defendant's general supervisor of transportation, who in 1914 had charge of routing freight cars on its lines, including the Puget Sound Railway, testified that there was an agreement between the different railroads operating in this country whereby they used each other's cars, but that the Puget Sound cars were "treated as our own system cars," and when delivered to defendant's yards were considered as delivered "home." In other words, a Puget Sound car was not treated as a "foreign car" but as one of defendant's cars, and therefore subject to demands for intrastate as well as interstate commerce.

There was no proof of any design or intention or purpose to put the car into interstate commerce as soon as it was repaired, or at any particular time. The mere fact that it was so used before the repair and next put to use in such service after repair is not controlling in determining the important question whether decedent was employed in interstate commerce when injured. In the line of his duty he would have been obliged to repair any car, whatever service it was to

be put into, whether interstate or intrastate. The car was not engaged in either service at the time it was being repaired, and without proof, express or implied, that it was being repaired for the specific purpose of being next used in interstate commerce, the deceased cannot be said to have been engaged in interstate commerce when he was injured.

This is not a case where an interstate haul was interrupted by the necessity of repairs to enable it to complete its journey, like the case of *Walsh v. New York, N. H. & H. R. Co.*, 223 U. S. 5, 6, 32, 1 N. C. C. A. 875, where the plaintiff was at the time of his injury engaged in replacing a drawbar upon a car in use in interstate commerce. Nor is it a case where there was a mere suspension in the use of a car continuously employed in interstate commerce, like a dining car in the case of *Johnson v. Southern Pac. Co.*, 196 U. S. 7. Nor a case like *Northern Pac. R. Co. v. Maerkl*, 198 Fed. 1, 117 C. C. A. 237, where an employee was injured while making repairs upon a refrigerator car that had been used in interstate commerce and "was intended again to be so used when repaired." Nor like *Law v. Illinois Cent. R. Co.*, 208 Fed. 869, 126 C. C. A. 27, where a "boiler maker's helper" was injured while repairing a "petticoat" for a freight engine regularly employed by defendant in interstate commerce. In each of the cases referred to the controlling fact was that the instrumentality of commerce under repair or temporarily withdrawn from service, was designed or intended, when so repaired or again put in service, to be put back into interstate commerce. But here no such intent or design was disclosed. The Puget Sound car was subject to the same treatment as defendant's cars, and, therefore, in the absence of proof of any different design or purpose, might at any time after the repair, have been put into intrastate commerce. In the case of *Minneapolis & St. L. Ry. Co. v. Winters*, 242 U. S. 353, 13 N C. C. A. 1127, the plaintiff was in-

jured while repairing an engine that was used in both interstate and intrastate commerce. In determining whether he was then engaged in interstate business, Mr. Justice Holmes said:

"An engine as such is not permanently devoted to any kind of traffic and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired to go on. It simply had finished some interstate business and had not yet begun upon any other. Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended on its employment at the time not upon remote probabilities or upon accidental later events."

If we substitute the word "car" for "engine," and "Illinois" for "Iowa," the quoted language is applicable to the facts at bar, for here as there the instrumentality did not appear to have been "destined especially to anything more definite than such business as it might be needed for," and "at the moment" it was not engaged in either interstate or intrastate commerce. Had it been destined for interstate commerce, as might possibly be said had the car been destined to be next routed towards the Puget Sound Railway tracks, then repairs on the car for the purpose of so routing it might be said to be so related to interstate transportation as to be practically a part of it, thus meeting the test of interstate commerce recognized in *Pedersen v. Delaware, L. & W. R. Co.*, 229 U. S. 146, 3 N. C. C. A. 779. But the evidence not disclosing that the car was so destined, we are of the opinion that deceased was not engaged in interstate commerce at the time of the injury.

In view of this conclusion, it is unnecessary to discuss other points raised by plaintiff in error. But we might add that even if decedent could be said to

have been engaged in interstate commerce at the time of the injury, we think the evidence shows that he assumed the risk of injury from the manner in which the work was conducted.

The usual way of supporting the car when thus raised for making repairs was by the use of horses. In the instant case a screw jack was used on one side instead of a horse. It is conceded that it was dangerous to work on or about the car so supported, and that there was danger that the neck of the screw jack might bend or break or otherwise cause the car to topple. All the witnesses recognized that that was an unsafe way to support the car. But defendant in error justifies decedent's continuing to work on it under such conditions because his helper testified to the effect that their foreman told them that it was all right to use the screw jack. The foreman, on the contrary, states that he did regard it all right to use it provided the truck of the car remained under it, and that it was under the car when the screw jack was put under it, and that he expressly cautioned the repairers to keep the truck under the car. But whichever version is correct, it must be conceded that the danger of working on the car while so supported was obvious to anyone, especially experienced men in the work like decedent. Stating that it was all right to use the screw jack, cannot be construed as an order to work on the car without further precautions of safety. The character of the evidence is not such as to bring it within the cases where a servant is ordered to work in a dangerous place under circumstances that relieve him of the assumption of risk. Nor does the evidence clearly show that any such order was given or could be implied.

It follows, therefore, that the judgment cannot be sustained either under the State law or Federal Employers' Liability Act. It must, therefore, be reversed with a finding of fact that at the time of the injury

plaintiff was not engaged in interstate commerce.

*Reversed.*

MR. PRESIDING JUSTICE MATCHETT and MR. JUSTICE GRIDLEY concur.