ROY A. JAMES, APPELLEE, V. CHICAGO & NORTHWESTERN RAILWAY COMPANY, APPELLANT.

FILED JANUARY 13, 1927. NO. 23491.

1. **Commerce:** EMPLOYERS' LIABILITY ACT: TEST OF EMPLOYMENT. The test of the employment and the application of the federal employers' liability act is, "Was the employee, at the time of the injury, engaged in interstate transportation, or any work so closely related to it as to be practically a part of it?"

2. ———: ———: ———. The test of jurisdiction in repair cases is whether the rolling stock, engine, or car is withdrawn from service at the time the repairs are made, as distinguished from being interrupted in the course of an interstate haul to go on.

3. ———: ———: APPLICATION. A machinist's helper, under the facts in this record, injured, while making repairs in the roundhouse, upon an engine which had been used in hauling over the railway company's lines freight trains carrying both intrastate and interstate freight, and which was used in the same way after the accident, was not then employed in interstate commerce within the meaning of the federal employers' liability act of April 22, 1908, governing the liability of an interstate carrier for injuries to its employees when employed in interstate commerce.

APPEAL from the district court for Douglas county: CARROL O. STAUFFER, JUDGE. *Reversed.*

*Wymer Dressler, Robert D. Neely* and *Paul S. Topping,* for appellant.

*Arthur F. Mullen, John O. Yeiser, John J. Shannon* and *John O. Yeiser, Jr., contra.*

Heard before ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

James v. Chicago & N. W. R. Co.

EBERLY, J.

Roy A. James brought this action in the district court for Douglas county against the Chicago & Northwestern Railway Company under the provisions of the "federal employers' liability act" for personal injuries claimed to have been received by him as results of accidents, the first occurring April 24, 1921, and the second on March 27, 1922, each separately stated as a cause of action, both alleged to have been caused by the negligence of the defendant.

The defenses interposed were (1) denial of injury and of negligence; (2) that plaintiff's condition was due wholly to disease (syphilis) ; (3) assumption of risk; (4) and that as to injury on March 27, 1922, settlement and release.

The trial resulted in a verdict and judgment in favor of the plaintiff for $25,000, to review which the defendant appealed.

As to the circumstances of the occurrences of the injuries, plaintiff's theory of the evidence is as follows: As to the first, occurring April 24, 1921, it is conceded that the plaintiff, as to employment, was within the terms of the federal statute. In view of the disposition of this case hereafter made, to recite the details of the transaction would therefore serve no purpose. As to the accident which occurred March 27, 1922, it appears that it was due to the breaking of a frame of a block and tackle in the roundhouse at Chadron, Nebraska, where plaintiff was employed as a machinist helper. On the day in question he was assisting a machinist engaged in repairing locomotive No. 1159. Plaintiff, by direction of this machinist, handed up to him, as the latter was standing on this engine, a chain hoist (block and tackle) which this machinist then attached to a hook suspended from the roof of the roundhouse for that purpose. This lifting device was then engaged to a portion of said engine, and the plaintiff, directed by the machinist referred to, was told to tighten up the chain. While complying with the directions thus given, the frame of the device broke or parted and the heavy pulley or wheel, descending, struck plaintiff on the head

James v. Chicago & N. W. R. Co.

causing the objective injury set forth in his petition. After the accident, on examination, the break in the chain hoist appeared clean and new and without a flaw in the metal. The roundhouse foreman testified that he knew of no imperfection appearing in this metal, and knew of no previous inspection having been made.

Previous to a consideration of the question whether the injuries which the plaintiff was suffering from, at the time of the trial in the court below, was the result of which these accidents were the proximate cause, there is presented for determination, as to the second cause of action, the question whether or not it comes within the terms of the federal employers' liability act of 1908.

Under the issues as claimed by the pleadings, the plaintiff has the affirmative in this matter and must carry the burden of proof. It is to be remembered that the test of the employment and application of the act above referred to is, was the employee, at the time of the injury, engaged in interstate transportation, or any work so closely relating to it as to be practically a part of it. *Shanks v. Delaware, L. & W. R. Co.*, 239 U. S. 556; *Chicago, B. & Q. R. Co. v. Harrington*, 241 U. S. 177; *Southern P. Co. v. Industrial Accident Commission*, 251 U. S. 259. On this point we find the parties to the case are at variance in their interpretation of the part of the evidence in the record relating to it. On this subject the plaintiff first introduced evidence that a number of workmen were employed in making repairs on engine No. 1159. One witness testified that he was engaged three days in making "heavy repairs" on engine No. 1159, but that he did not know how many other workmen were like employed or the total time consumed in making the repairs. Plaintiff also introduced evidence which tended to show that every train that was made up at Chadron, where the roundhouse in question is located, was constituted in part of interstate cars, or carried freight having an interstate destination, and that engine No. 1159, prior to the repairs, was engaged in hauling such trains

James v. Chicago & N. W. R. Co.

and was in like manner employed after the repairs in question were made.

The defendant introduced in evidence, without objection, certain entries in the roundhouse register disclosing that engine No. 1159 arrived at the roundhouse, Chadron, Nebraska, March 18, 1922, 10:05 p. m. and next departed therefrom April 12, 1922. The defendant also introduced in evidence, without objection, a form, No. 788, being a monthly report or statement for March, 1922, made up at the close of that month in the ordinary course of business of the defendant, showing the amount of work accomplished in the line of classified or authorized unclassified repairs other than running repairs at the Chadron roundhouse shop. This statement or report disclosed that No. 1159, "Date at shop" "March 18," "Date in shop" "March 18," "Date out shop" "March 31." The evidence is not contradicted that the repairs were "class 5 repairs" and were wholly made and completed at the Chadron shop and were intended to put the engine in condition for quarter-term service; that is, to cover a mileage of 50,000 to 60,000 miles. An "X and O" record, or sheet, was also introduced in evidence without objection which contained an itemized list of the repairs actually made on engine No. 1159 at the time referred to, and the cost thereof, amounting to $2,336-.58. Of this, the cost of labor expended in making these repairs appeared to be $366.18. The cost of the material used was $1,806.83.

The defendant sought to discredit the recitals of the "roundhouse register" showing arrival and departure of engines by cross-examination largely based on the fact of the existence of rule or custom by which defendant's engine inspectors performed their duty ordinarily on the arrival of engines at the roundhouse, and also on two inspectors' reports, one dated March 17, 1922, and one March 20, 1922, each of which disclosed that on the date mentioned No. 1159 was inspected. Reference was also made in the cross-examination to an inspector's report dated March 24, 1922, supposedly made under the same conditions, but this report

does not appear in evidence. The effect attained by this cross-examination is a matter of controversy.

Yet, even if this be given its most favorable construction, the fact still indisputably remains that engine No. 1159 was withdrawn from service on or after March 18, 1922, for a sufficient length of time to make class 5 repairs thereon to the extent of $2,336.58, including $366.18 expended for labor, and all of which were completed by March 31, 1922, inclusive.

And it would further seem that the plaintiff has wholly failed to meet the burden of proof imposed upon him by the issues and to establish the fact that, while engaged in making these repairs, he was engaged in interstate commerce within the meaning of the rule already quoted.

The evidence of the record, given the most favorable construction for the plaintiff, establishes no more than that No. 1159, a pool freight engine, "class R," and one without a definite run assigned, which, previous to the making of repairs, was engaged in pulling freight trains from and to Chadron, Nebraska, carrying both interstate and intrastate freight, and that after the repairs were completed it was continued in the same business of drawing such freight to and from Chadron, Nebraska, and that the interstate freight in car-load lots, or otherwise, formed a portion of each of the trains thus drawn, both before and after the time the repairs were made, and that the exact period of time occupied in the repair work was somewhat shorter than disclosed by defendant's evidence.

It must be remembered that "An engine, as such, is not permanently devoted to any kind of traffic, and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other." *Minneapolis & St. L. R. Co. v. Winters*, 242 U. S. 353.

Counsel, however, contend that the case of *Law v. Illinois C. R. Co.*, 126 C. C. A. 27, 208 Fed. 869, L. R. A. 1915C,

17, sustains plaintiff's contention, and that the instant case is even a stronger case than the one last referred to. This may be conceded. The doctrine of *Law v. Illinois C. R. Co.* may be fairly set forth in the following excerpts: "In the instant case the engine was in the shop for what is called 'roundhouse overhauling.' It had been dismantled at least 21 days before the accident. Up to the time it was taken to the shop it was actually in use in interstate commerce. It was destined for return thereto upon completion of repairs. It actually was so returned the day following the accident. It clearly did not lose its interstate character from the mere fact that it was not at the time actually engaged in interstate movement, no more than did the dining car in *Johnson v. Southern P. Co.*, 196 U. S. 1. * * * Were the repairs being made in the roundhouse between two regular daily trips, the engine, while under such repair, would clearly not lose its character as an instrumentality of commerce; and plaintiff, in such case, would have been engaged in interstate commerce. We have not here a case of original construction of an engine not yet become an instrumentality of interstate commerce. It had already been impressed with such use and with such character. Its preservation as such was not a matter of indifference to defendant, so far as its interstate commerce was concerned. * * * Under the existing facts, can the length of time required for the repairs change the legal situation? If so, where is the line to be drawn? How many days temporary withdrawal would suffice to take it out of the purview of the act? And is it material whether the repairs take place in a roundhouse or in general shops? Is not the test whether the withdrawal is merely temporary in character?" The court then cites the case of *Northern P. R. Co. v. Maerkl*, 117 C. C. A. 237, 198 Fed. 1, to sustain the conclusion. And, based on the premises hereinbefore recited, the court, in the *Law* case, found that the employees were within the purview of the federal employers' liability act at the time the repairs were made under the conditions set forth herein. And it may be conceded that, if this is the law, it ap-

plies to the plaintiff's case herein and sustains his contention.

The case of *Chicago, K. & S. R. Co. v. Kindlesparker*, 234 Fed. 1, save only as to the question of time consumed in making repairs, being 79 days instead of 21 days, presents essentially the same facts as the *Law* case states. On these facts the circuit court of appeals held Kindlesparker was engaged in interstate commerce at the time of the injury. However, this decision was reversed by the supreme court of the United States, 246 U. S. 657, "upon the authority of *Minneapolis & St. L. R. Co. v. Winters*, 242 U. S. 353." This must be construed to be at least an implied repudiation of the doctrine set forth in the *Law* case.

The doctrine of the *Law* case came directly before the supreme court of the United States in the case of *Industrial Accident Commission v. Davis*, 259 U. S. 182. In discussing this *Davis* case, Mr. Justice McKenna, in delivering the opinion of the court, proceeds as follows: "We may assume, though the fact is contested, that the engine was sent from exclusive employment in interstate commerce to the repair shops. It was sent there for general overhauling December 19, 1918, and was, to a certain extent, stripped and dismantled. It was estimated that the work upon it would be finished January 30, 1919, but it was not actually completed until February 25, 1919. The accident occurred on February 1st of that year. After the repairs were finished, the engine was given a trial trip, and finally put into service in interstate commerce. * * * The court, we are prompted to say, had precedents in *Northern P. R. Co. v. Maerkl*, 198 Fed. 1, and *Law v. Illinois C. R. Co.*, 208 Fed. 869, and it was natural to regard them as persuasive, as they were decisions of circuit courts of appeal. * * * The facts in the *Law* case do identify it with the case at bar. The period of repairs in it was 21 days, and it was cited as a precedent in *Chicago, K. & S. R. Co. v. Kindlesparker*, 234 Fed. 1. * * * And it is this separation that gives character to the employment, as we have said, as being in or not in commerce. Such, we think, was the situation of

the engine in the present case. It was placed in the shop for general repairs on December 19, 1918. On February 25, 1919, after work upon it, it was given a trial, and it was placed in service on March 4, 1919. The accident occurred on February 1st of that year, the engine at the time being nearly stripped and dismantled. 'It was not interrupted in an interstate haul to be repaired and go on.'"
The court then cites *Minneapolis & St. L. R. Co. v. Winters*, 242 U. S. 353, and *Chicago, K. & S. R. Co. v. Kindlesparker*, 246 U. S. 657. The supreme court thereupon reversed the judgment of the court below on the basis of the principles referred to herein. This, in effect, was direct repudiation of the doctrine of the *Law* case.

It will be noted from the preceding discussion that the opinions of the supreme court all proceed on the basis that the doctrine announced in the *Winters* case is controlling. And this case now presents itself for our consideration. It was a proceeding in error from the supreme court of the state of Minnesota, where the case had been twice determined, to the supreme court of the United States. The facts, as shown by the reported cases, are that the plaintiff received his injury while engaged in the work of putting new tires on an engine belonging to the defendant, the work being done in the roundhouse of the latter. It may be said that the present record discloses that class 5 repairs included this identical work. The engine had, prior to being sent to the roundhouse for repairs, been engaged in interstate commerce, it being stipulated that for several months prior to the injury the locomotive in question was used in hauling freight trains over defendant's line of road in Iowa and other states, hauling both interstate freight and intrastate freight; that it was so used after plaintiff's injury; that the last time prior to the injury when the engine was used was on October 18, 1912, when it came into Marshalltown, Iowa, pulling a freight; "and that the first time it was used after the injury was on October 21, 1912, when it pulled a train carrying such freight out of Marshalltown."

*Winters v. Minneapolis & St. L. R. Co.,* 126 Minn. 260. These facts are identical with the instant case. Even if the plaintiff is given the advantage of every possible suspicion which his cross-examination might create or tend to create, still the fact remains that engine No. 1159 was being repaired in a similar manner, and that the period which was occupied for this purpose was more extended than in the case now being considered. The opinion was rendered by Justice Holmes of the supreme court of the United States and may be epitomized by stating that, under the facts herein recited, it was held: A machinist's helper, injured, while making repairs in the roundhouse, upon an engine which had been used in hauling over the railway company's lines freight trains carrying both intrastate and interstate freight, and which was used in the same way after the accident, was not then employed in interstate commerce within the meaning of the federal employers' liability act of April 22, 1908 (35 St. at Large, 65, ch. 149) governing the liability of an interstate carrier for injuries to its employees when employed in interstate commerce. *Minneapolis & St. L. R. Co. v. Winters, supra.*

It, therefore, necessarily follows that the facts relating to the second cause of action, as disclosed by the record, were insufficient to establish a claim under the federal statutes against the defendant, and plaintiff is necessarily relegated to whatever right he may have under the provisions of the Nebraska law.

Plaintiff contends that, though this court determine that he has failed in his proof necessary to bring his second cause of action within the provisions of the federal employers' liability act, still the verdict and judgment should be sustained as though rendered in an action based on negligence at common law. In support of his contention he cites *Corbett v. Boston & M. R. Co.,* 219 Mass. 351. In this case it may be said that the plaintiff sued, first, under the terms of a state liability act in her individual capacity. Thereafter she was appointed administratrix of her husband's estate and brought an action under the terms of the federal

James v. Chicago & N. W. R. Co.

employers' liability act. Issues were properly made up under the terms of the state statute in one case, and under the terms of the federal employers' liability act in the other. These cases were consolidated for trial. On the trial of this consolidation of causes, the trial judge entered a judgment in favor of the defendant in plaintiff's action brought in her individual capacity, deeming himself deprived of jurisdiction to hear the same because of pendency of the case based on the federal statute. The supreme court of Massachusetts held that this was error, and that the true rule was that the plaintiff could not be compelled to elect which action she will pursue, where deceased was engaged in both interstate and intrastate commerce, until the evidence develops in which employment the injury occurred.

We have no occasion to dissent from the reasoning in this Massachusetts case, but it is wholly inapplicable to the question before us. Plaintiff's second cause of action was pleaded as governed by the provisions of the federal employers' liability act. Whether it was or not was one of the disputed questions in the case, and which has now been resolved against the contentions of plaintiff.

It is to be noted further that the federal employers' liability act by its terms eliminates certain defenses that exist at common law, and qualifies others. To concede plaintiff's contention would be to permit him to take advantage of the benefits of these provisions in an action to which the law itself did not apply. This court cannot say that, deprived of the advantages which the federal employers' liability act confers, the plaintiff would have prevailed in the trial had in the district court. For, indeed, not only the issues, but the proof, might well have been quite different. It follows, therefore, that for the purposes of this case the plaintiff must stand or fall on the basis which he himself determined for the bringing of his lawsuit.

In conclusion, it may be said that the verdict before us was a general one, and is based upon two causes of action

which appear in plaintiff's petition. This court has no means of determining the extent which either of these causes of action is reflected in the amount of the verdict returned. The cause, therefore, must be reversed and remanded for a new trial. We have not overlooked the other contentions presented by the appellant in his brief, and argued to the court. However, in view of the fact that a new trial must be had, it is thought that no good would arise from further discussion.

REVERSED.