## Henry J. Patry, Appellee, v. Chicago & Western Indiana Railroad Company, Appellant.

### Gen. No. 18,790.

1. MASTER AND SERVANT; § 826*—*when inconsistent findings construed as finding contributory negligence.* In an action by a switchman for personal injuries a special finding deducting the sum of $5,000 from the total amount of damages, stating that it was "the proportion or just share thereof attributable to the negligence of plaintiff," is necessarily a finding of contributory negligence, although the jury specifically found otherwise in another special finding, hence the verdict cannot stand on a common-law count.

2. COMMERCE, § 4*—*when relation of accident to interstate commerce must be shown.* Where in an action under the Federal Employers' Liability Act the effect which the accident had or tended to have upon interstate commerce is left wholly to conjecture, a verdict for plaintiff will not be permitted to stand.

3. COMMERCE, § 4*—*when employe not engaged in interstate commerce.* The mere fact that a switching crew, of which plaintiff

362    Appellate Courts of Illinois.

Patry v. Chicago & Western Indiana R. Co., 185 Ill. App. 361.

was a member, was engaged during the greater portion of the time in moving empty coaches engaged in interstate commerce does not bring the case within the Federal Employers' Liability Act, where at the time of the injury plaintiff was engaged in moving to a coach yard, cars employed in intrastate commerce, and the accident, which occurred at a terminal station, in no way interfered with trains engaged in interstate commerce, entering or leaving the station.

4. Commerce, § 3*—*what is test under Federal Employers' Liability Act.* In an action under the Federal Employers' Liability Act the test of liability is not whether the carrier is one that engages in interstate commerce, but whether the act in which it was engaged at the time of injury to its employe constitutes or affects interstate commerce.

5. Commerce, § 4*—*when interstate commerce not involved in action under Federal Employers' Liability Act.* Where in an action by a switchman under the Federal Employers' Liability Act it was shown that at the time of the injury plaintiff was engaged in moving from a railway terminal, at which interstate trains arrived and departed, certain empty cars used only in intrastate commerce, that the movement was on tracks in which there were no trains at the time engaged in interstate commerce, and that neither the movement nor the accident occasioned thereby tended in any way to impede or interfere with the movement of any train engaged in interstate commerce, it was *held* that the case was not within the act.

6. Commerce, § 4*—*when interstate commerce not affected by injury to employe.* Where at the time of his injury, a switchman was employed in the movement of empty cars engaged only in intrastate commerce, the fact that under the usual schedule in the yards he would, if he had not been injured, have been engaged in the movement of trains engaged in interstate commerce about a half hour later, raises no presumption of itself, that his injury affected or had a tendency to affect interstate commerce.

7. Appeal and error, § 1250*—*when requesting special findings not a waiver of refusal of instruction.*—Where in an action under the Federal Employers' Liability Act defendants request that the court instruct the jury that it was not engaged in interstate commerce at the time of plaintiff's injury was denied, error in denying same is not waived by the submission of special interrogatories thereon at defendants' request.

Clark, J., dissenting.

Appeal from the Circuit Court of Cook county; the Hon. Mazzini Slusser, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Reversed. Opinion on rehearing filed March 10, 1914.

C. G. AUSTIN and BEVERLY W. HOWE, for appellant; WILLIAM S. KIES, of counsel.

JAMES C. McSHANE, for appellee.

MR. JUSTICE BARNES delivered the opinion of the court.

This is an appeal from a judgment awarding damages on account of an injury sustained by appellee while working as a switchman for appellant. In view of the fact that the jury deducted from the total amount of damages, which it found appellee sustained, the sum of five thousand dollars, stating in a special finding that it was "the proportion or just share thereof attributable to the negligence of plaintiff," it necessarily found that appellee was guilty of contributory negligence, even though it specifically found otherwise in another special finding. The verdict and judgment, therefore, cannot stand on a common-law count. They must stand, if at all, on the theory on which the case was apparently tried, that it comes within the provisions of the Act of Congress of April 22, 1908 (35 Stat. 65, c. 149), known as the "Employers' Liability Act," which provides for a diminution of damages where there is contributory negligence. We shall first state the facts essential to the consideration of that theory.

The accident occurred at the Dearborn railway station, Chicago, used by appellant and its several tenant lines. Appellant furnished them terminal facilities, trackage rights, and the use of said station, which it maintained together with the approaches thereto, the yards and other facilities. For brevity, the companies to which it furnished such service may be designated as the Grand Trunk, Wabash, Monon, Erie, Santa Fe and Ohio, respectively. All of them engaged in interstate commerce. Suburban or local trains, engaging only in intrastate passenger service, were run in and out of that station by the Grand Trunk, Wabash and appellant, respectively.

Appellant's tracks are all in the State of Illinois. They intersect and connect with practically all the railroads entering Chicago. A portion of the trackage is leased to and operated by the Belt Railway Company of Chicago. Whether or not it is engaged in interstate traffic, its business and appellant's are entirely separate. The only business conducted by appellant as a common carrier is the operation of its suburban trains aforesaid. None of the trains, engines and cars used in such service go outside of the State.

In the city, about five miles south of the station, appellant has a coach yard and roundhouse. After the arrival of a train of a tenant company in the station, its engine is uncoupled and taken by its own crew to the roundhouse, and appellant's engine, with its crew consisting of an engineer, fireman, conductor and two switchmen, hauls the coaches of said train to the coach yard, where they are cared for until hauled back by appellant's engine and crew to await the engine of the tenant company, which is usually attached to the coaches a short time prior to the departure of the train. Appellant has nothing to do with any of the tenant's passenger trains while in service, and not until their trip is completed. It merely handles their empty coaches. It had another yard just south of the station, in which it usually handled, switched and stored cars engaged in suburban service.

The train shed at said station is about five hundred feet long. The tracks within it are numbered, from west to east, one to ten respectively. About four hundred and fifty feet from the shed is what is called a "puzzle" switch through which engines and coaches, as they approach, may be turned into these tracks.

Appellant had a force of men working day and night with about seven engines, removing empty cars to and from their respective yards. At 6:00 P. M. on the evening of the accident the crew to which appellee be-

longed began as usual its period of twelve hours' work. They were accustomed first to put in thirty to forty-five minutes on suburban or local trains and the rest of the night on interstate trains. The trains in the station at the time of the accident were arranged on the several tracks as follows: A Wabash local on track 1; a Grand Trunk local on track 2; a "made-up" appellant's local on track 4, ready to depart at 6:18 P. M., and in front of it two of appellant's local coaches. The record shows no other trains in the station at the time, except on tracks 6 and 8, one an Erie, the other a Monon train.

The first work of the evening was to remove the Wabash local on track 1, and appellant's two local coaches on track 4, to the yard nearby (which ordinarily took about ten to fifteen minutes), so that the local train on the latter track, ready to depart at 6:18, could get out of the station.

None of the cars engaged in or affected by this movement, or on the tracks used in it, were operated in anything except intrastate commerce.

The engine in question, going north, ran into the shed on track 1, coupled to the two Wabash coaches thereon, backed and switched to track 4, and went north thereon to couple said coaches to appellant's two suburban coaches. On account of negligence by appellee or the engineer (which it is unnecessary to consider) to observe signals and the consequent failure to control the engine, the cars were brought together under the shed with considerable force, causing the injury to appellee.

The accident happened shortly after 6:00 P. M. The time of the departure of the trains from the station up to 9:00 P. M. was as follows: A Santa Fe interstate train at 6:00 (which appears to have left before the accident); a Wabash local at 6:20; one of appellant's locals at 6:23; a Grand Trunk local at 6:25; a Santa Fe interstate at 8:00; a Monon interstate at

9:00. The arrivals up to 9:00 P. M. were as follows: One of appellant's locals at 6:02; a Grand Trunk interstate at 6:30; one of appellant's locals at 7:25; a Wabash local at 7:50; a Monon interstate at 8:05; and a Grand Trunk interstate at 8.55. What tracks these trains used the record does not show. It does appear, however, that the yardmaster could and often did turn them in on any of the ten tracks as was to the greatest advantage. The accident did not prevent the use of any one of the other nine tracks or the operation of the switch. It does not even appear that it occasioned any delay in removing the coaches that were the subject of the accident, or their use, or the usual use of the track they were on, or the departure of the local train back of them on schedule time. In fact, there was no attempt to show that any train, local or interstate, failed to arrive or depart on schedule time in consequence of the accident. It will be observed from the foregoing schedule that no interstate train was due to arrive or depart until about two hours thereafter except a Grank Trunk due to arrive at 6:30, whose movement, for aught the record shows, was on schedule time.

On such a state of facts the court was asked by appellant in due order to direct a verdict for it on the counts based on the Federal statute, to instruct the jury as a matter of law that neither appellant nor appellee was engaged in interstate commerce, and to grant a new trial. As the facts bearing upon the question of interstate commerce were undisputed, it became a question of law, and error is assigned on the court's refusal of these several requests. It becomes necessary, therefore, to consider whether the evidence tends to show that appellant and appellee were engaged in interstate commerce at the time of the accident. As conceded by appellee, this presents the question whether the evidence tends to show that the nature of the act engaged in at that time had any direct, real or substantial relation or connection with interstate

commerce, it being said by the United States Supreme Court in the *Second Employers' Liability Cases* (223 U. S. 1), that the power of Congress over commerce "does not extend to any matter or thing which does not have a real or substantial relation to some part of such commerce." (P. 47.)

It clearly appears from the foregoing facts that the work engaged in at the time pertained wholly and directly to the movement of intrastate trains and that their movement in no way involved or affected the movement of an interstate train.

The only possible relation, therefore, the accident could have to interstate commerce was such as might ensue from disabling appellee, as one of the alleged instrumentalities thereof, from rendering further service, which, in the regular course of employment, would in a half hour or so have been connected with the movement of empty cars used for interstate trains. But it does not appear that the elimination of his service tended to delay or interfere with the movement of those trains or those cars. As far as the record shows, they continued to move as usual. If the accident had or tended to have any effect on interstate commerce, it does not affirmatively appear, but is left wholly to conjecture, and "mere surmise or conjecture is never regarded as proof of a fact and the jury will not be allowed to base a verdict thereon." *Lyons v. Chicago City Ry. Co.*, 258 Ill. 75, 81; 14 Encyc. of Evidence, 99.

The claim of such a relation is based mainly on the fact that for the greater part of the time the engine and its crew were employed in moving empty coaches used in interstate commerce. But, assuming such movements constituted interstate commerce, or that appellant was engaged in interstate commerce in any other branch of its service, such facts would not be controlling. The test of liability under the statute is not whether the common carrier is one that engages

in interstate commerce, but whether the act, in which it may be engaged at the time of injury to its employe, constitutes or affects interstate commerce. To quote the most recent expression of the United States Supreme Court on this subject: "The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?" *Pedersen v. Delaware, L. & W. R. Co.,* 229 U. S. 146, 152.

Because of the failure of the original Employers' Liability Act, passed in 1906, to observe this distinction, the Supreme Court of the United States declared it unconstitutional. *Employers' Liability Cases,* 207 U. S. 463. That statute was addressed to every common carrier engaged in interstate commerce, without limitation as to whether its business was at all times of that character. In the case last cited, Mr. Chief Justice White, referring to its failure to observe such limitation, said that it imposed a liability on railroads "without qualification or restriction as to the business in which the carriers or their employes may be engaged at the time of the injury." (Id. p. 498.)

Referring to the present act passed to cure such defect, the Court said in the *Pedersen* case, *supra*: "There can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier is engaged in interstate commerce and while the employe is employed by the carrier in such commerce." (P. 150.)

The record before us contains no evidence tending to establish such a state of facts. The essential and undisputed facts, when summarized, are: (1) The act engaged in at the time of the injury was a movement of coaches used only in intrastate commerce; (2) the movement was on tracks on which there were no trains at the time engaged in interstate commerce; (3) neither the movement nor the accident occasioned thereby tended in any way to impede or interfere with the movement of any train engaged in interstate commerce.

We recognize that the statute in question is given the broadest construction, and that the meaning given to the term "interstate commerce" in the Federal courts is sufficiently elastic to include acts which have such a substantial and close relation to it as directly tend to affect it. But in the Federal cases where this statute has been applied, that relation clearly appears, and does not rest on mere speculation or possible situations. Inasmuch as these cases are cited to support appellee's contentions, we shall briefly point out the features that in our judgment clearly distinguish them from the case at bar.

In the *Pedersen* case, *supra,* the carrier's employe was injured by one of its trains while he was carrying bolts to be used in putting a girder into a bridge that was out of repair and used for interstate as well as intrastate commerce. The act being essential to the keeping of an instrumentality of interstate commerce in a proper state of repair, it was held to be so clearly related thereto as to be in practice and legal contemplation a part of it.

In *St. Louis, S. F. & T. Ry. Co. v. Seale,* 229 U. S. 156, the carrier's employe was injured by one of its trains while he was engaged in an act directly connected with an incomplete interstate transportation in which the carrier was engaged, namely, while going through its railroad yard to meet an incoming interstate freight train for the purpose of performing his duty of ascertaining the numbers and initials of cars for the guidance of the switching crews, it being necessary that the trains be broken up and the cars taken to appropriate tracks for making up outgoing trains or unloading freight. The act was held to be connected directly and immediately with the movement of interstate freight.

In *Norfolk & W. Ry. Co. v. Earnest,* 229 U. S. 114, the employe was injured while piloting the carrier's locomotive through several switches to a main track where it was to be attached to an interstate train to

assist in moving it to another station. The connection with interstate commerce was so obvious as not to be questioned.

In *Lamphere v. Oregon R. & Nav. Co.*, 116 C. C. A. 156, 196 Fed. 336, the employe was killed by a train of the carrier engaged in interstate commerce while he was proceeding under its imperative command on his way to relieve, in the capacity of fireman, the crew of an interstate train. As held by the court, the accident had the direct effect of hindering and delaying the movement of that train.

In *Zikos v. Oregon R. & Nav. Co.*, 179 Fed. 893, the employe was injured while engaged in repairing the carrier's main track used in interstate commerce, an act manifestly connected therewith.

In *Central R. Co. of New Jersey v. Colasurdo*, 113 C. C. A. 379, 192 Fed. 901, the carrier's employe was struck by its train engaged in interstate commerce while he was repairing an interstate road over which interstate passengers, freight, cars and engines engaged in interstate commerce were constantly passing.

In *Northern Pac. Ry. Co. v. Maerkl*, 117 C. C. A. 237, 198 Fed. 1, the carrier's employe was injured while engaged in repairing a car used by it indiscriminately in both interstate and intrastate commerce.

In each of the foregoing cases there is little, if any, room for controversy that with respect to the act in which the employe was engaged at the time of his injury or death, both he and the carrier were engaged in interstate commerce. In each the act being performed directly contributed to carrying on interstate commerce, either by repairing or putting to practical use therefor a necessary instrumentality thereof, or in obstructing or impeding the operation of a train engaged therein. Under one or the other of these classifications fall all of the cases to which our attention has been directed. Others cited are: *Carr v. New York Cent. & H. R. R. Co.*, 77 Misc. (N. Y.) 346; *Jones v.*

*Chesapeake & O. Ry. Co.,* 149 Ky. 566; *Horton v. Oregon-Washington R. & Nav. Co.,* 72 Wash. 503; *Montgomery v. Southern Pac. Co.,* 64 Ore. 597; *Behrens v. Illinois Cent. R. Co.,* 192 Fed. 581.

In some cases, notably the *Behrens* case, *supra,* the relation of the act engaged in to interstate commerce was held to exist mainly because of the indiscriminate character of the work. But no such feature is presented here. Appellee was not moving trains indiscriminately. For the first half hour or so he was regularly employed in nothing else than the movement of intrastate trains. The fact remains that neither he nor appellant was, at the time of his injury, engaged in an act of interstate commerce or one that in any wise related or contributed thereto.

It appearing, therefore, that appellee was injured while engaged in an act that was distinctly one of intrastate commerce, having no relation to the acts in which he might have been engaged later in connection with interstate commerce, no liability was established under the Employers' Liability Act in the absence of proof that the injury he suffered had or tended to have some real, and not merely imaginary effect on the latter. The fact that he might have been employed in interstate commerce half an hour or so later had he not been injured, raises no presumption of itself that his injury actually affected or had a tendency to affect interstate commerce. If it be otherwise, then the power of Congress over interstate commerce, which extends to a matter or thing that has a "real or substantial relation" thereto, will be construed to rest, not on the actual existence of such relation but the possibility of it. Thus the line of demarcation between intrastate and interstate commerce would become so obscure as to render more theoretical than practical the distinction upon which the first Employers' Liability Act was held unconstitutional.

But it is urged by appellee that because the court,

at appellant's request, submitted special interrogatories requiring the jury to answer whether either appellant or appellee was engaged in interstate commerce at the time of the injury, and because appellant made no specific objection or motion with respect to the jury's adverse finding thereon, it cannot be heard here to deny that it was a question of fact. The court having refused to instruct the jury that appellant was not engaged in interstate commerce as a matter of law, to which appellant excepted, and having thereby ruled adversely to appellant's contention, "appellant company was not," as said in *North Chicago Electric Ry. Co. v. Peuser*, 190 Ill. 67, "required to abandon all chances of a favorable verdict because the court would not grant an instruction to which it believed it was entitled." The case having been submitted to the jury on appellee's theory that it was a question of fact and not of law, appellant had the right to any benefit it might obtain thereunder, without waiving its theory that the question was one of law. This is quite a different proposition from that urged by appellee, namely, the right to question in this court the sufficiency of evidence to support a special finding of fact where that question was not raised on a motion for new trial.

Cases are cited by appellee to the effect that whether parties are engaged in interstate commerce is a question of fact. In those cases there was evidence tending to support the fact in controversy, but in the absence of evidence tending to show a fact essential to a verdict for a plaintiff, there is nothing for the jury to consider. Had the motions for directed verdicts on the counts predicated on the federal statute, which we think the record shows to have been duly presented, been granted, or had said refused instructions been given as they should have been, the jury's deliberations would have been confined to the question of liability at common law, as to which their finding, as above stated, was adverse to appellee. The judgment must be reversed with the necessary consequence of

a finding here of nonliability on the part of appellant.

*Reversed.*

MR. JUSTICE CLARK dissenting: The record is in such condition that it perhaps must be assumed, so far as this case is concerned, that passenger cars used in so-called suburban trains, plying only between points within the State, are at no time instrumentalities of interstate commerce, notwithstanding the well-known fact that passengers traveling upon interstate journeys, using through tickets sold at suburban stations, are, with their baggage, often transported for a part of the way in such cars, and that passengers also frequently are transported upon through tickets to suburban stations, having begun their journeys at points outside the State. In a great terminal station like the one in which this accident occurred, switch engines, the men who work upon and with them, the tracks, switches, buildings, etc., are used very largely, and often principally, in what is concededly interstate commerce. Clearly, under the authorities, the switch engines, tracks, switches, buildings, etc., are at all times instrumentalities of interstate commerce, and the work of keeping them in repair, "is so closely related to such commerce as to be in practice and in legal contemplation a part of it." *Pedersen v. Delaware, L. & W. R. Co.,* 229 U. S. 146, 151.

The duties of a switchman who is required to use these instrumentalities, whatever may be the character of his immediate work, would also seem to be "so closely related to such commerce as to be a part of it."

In *Southern Ry. Co. v. United States,* 222 U. S. 20, 27, it is said:

"Speaking only of railroads which are highways of both interstate and intrastate commerce, these things are of common knowledge: Both classes of traffic are at times carried in the same car and when this is not the case the cars in which they are carried are frequently commingled in the same train and in the switching and other movements at terminals. Cars are seldom set apart for exclusive use in moving either class

of traffic, but generally are used interchangeably in moving both; and the situation is much the same with trainmen, switchmen and like employes, for they usually, if not necessarily, have to do with both classes of traffic. Besides, the several trains on the same railroad are not independent in point of movement and safety, but are interdependent, for whatever brings delay or disaster to one, or results in disabling one of its operatives, is calculated to impede the progress and imperil the safety of other trains."

In my opinion the facts as disclosed by the record show that the nature of the act engaged in at the time of plaintiff's accident had a very direct, real and substantial connection with interstate commerce.

In the case of *Behrens v. Illinois Cent. R. Co.,* 192 Fed. 582, the Court says:

"In this view of the case, I consider that the usual and ordinary employment of the decedent in interstate commerce, mingled though it may be with employment in commerce which is wholly intrastate, fixes his status, and fixes the status of the railroad, and the mere fact that the accident occurred while he was engaged in work on an intrastate train, rather than a few minutes earlier or later when he might have been engaged on an interstate train is immaterial. If he was engaged in two occupations that are so blended as to be inseparable, and where the employe himself has no control over his own actions and cannot elect as to his employment, the court should not attempt to separate and distinguish between them."

The case last referred to does not appear to have been considered by a court of review. The opinion expressed, however, is in my judgment in consonance with the purpose of Congress in enacting the ameliorative legislation upon which this suit is based. That Congress had the power to enact such legislation is no longer a matter of doubt. *Second Employers' Liability Cases,* 223 U. S. 1.

The term "intrastate train," as used in many cases, is misleading if the idea conv ed is that such trains may not be mediums or instru ntalities of interstate commerce.